Nos. 22-1019, 22-1020 (consolidated)

# UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

EAGLE COUNTY, COLORADO,

Petitioner

v.

SURFACE TRANSPORTATION BOARD, et al.,

Respondents,

and

SEVEN COUNTY INFRASTRUCTURE COALITION, et al.,

Intervenor-Respondents.

———————————

On petition for review of final action
of the Surface Transportation Board

———————————

## INTERVENOR-RESPONDENTS' MOTION FOR REMAND WITHOUT VACATUR

———————————

Jay C. Johnson
Venable LLP
600 Massachusetts Ave., NW
Washington, DC 20001
(202) 344-4000
jcjohnson@venable.com

Counsel for Intervenor-Respondents Seven County Infrastructure
Coalition and Uinta Basin Railway, LLC

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS.................................................................. i

INTRODUCTION .......................................................................... 1

ARGUMENT ................................................................................ 2

I.   Because the Supreme Court's decision addressed only NEPA, this case should be remanded................................................... 2

II.  Because the Board can adequately explain itself on remand, its order should not be vacated................................................. 4

   A.   The Board's explanation for its ESA decision does not justify vacatur. .................................................................. 5

   B.   The ICC Termination Act errors identified by this Court are easily corrected. .......................................................... 7

      1.   The Supreme Court's decision validates the Board's NEPA review. ............................................................. 8

      2.   Questions about financial viability are easily answered on remand. .............................................. 11

   C.   Remand without vacatur would not risk significant disruption. ....................................................................... 14

CONCLUSION.............................................................................. 16

CERTIFICATE AS TO PARTIES AND AMICI............................. 20

RULE 26.1 DISCLOSURE STATEMENT ...................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.P. Bell Fish Co., Inc. v. Raimondo,*
    94 F.4th 60 (D.C. Cir. 2024) ...................................................... 14

*Am. Clean Power Ass'n v. FERC,*
    54 F.4th 722 (D.C. Cir. 2022) ...................................................... 4

*Am. Pub. Gas Ass'n v. U.S. Dep't of Energy,*
    22 F.4th 1018 (D.C. Cir. 2022) ............................. 1, 4, 6, 8, 11, 13

*Black Oak Energy, LLC v. FERC,*
    725 F.2d 230 (D.C. Cir. 2013) ..................................................... 14

*CSX Corp. & CSX Transp., Inc., Norfolk S. Co. &*
    *Norfolk S. Ry. Co. – Control & Operating*
    *Leases/Agreements – Conrail Inc. & Consolidated*
    *Rail Corp.,*
    3 S.T.B. 196, 1998 WL 456510 (July 20, 1998) ......................... 9

*Ctr. for Biological Diversity v. EPA,*
    861 F.3d 174 (D.C. Cir. 2017) ................................................... 3, 4

*Delta Air Lines, Inc. v. Export-Import Bank of the U.S.,*
    718 F.3d 974 (D.C. Cir. 2013) ................................................... 14

*Dep't of Transp. v. Pub. Citizen,*
    541 U.S. 752 (2004) ..................................................................... 8

*Eagle County, Colo. v. Surface Transp. Bd.*
    82 F.4th 1152 ......................................... 1, 2, 3, 5, 6, 7, 10, 11, 12

*Fox Television Stations, Inc. v. FCC,*
    280 F.3d 1027 (D.C. Cir. 2002) ....................................... 12, 14, 15

*Mid States Coal. for Progress v. Surface Transp. Bd.*,
  345 F.3d 520 (8th Cir. 2003) .............................................. 4, 9, 12

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm
  Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ........................................................... 5

*Ne. Md. Waste Disposal Auth. v. EPA*,
  358 F.3d 936 (D.C. Cir. 2004) ...................................... 13

*Radio-Television News Dirs. Ass'n v. FCC*,
  184 F.3d 872 (D.C. Cir. 1999) ...................................... 4

*Seven County Infrastructure Coalition v. Eagle County*,
  605 U.S. --, 145 S. Ct. 1497 (slip op.) ........ 1, 3, 6, 8, 9, 10, 11, 15

*Shafer & Freeman Lakes Environmental Conservation
  Corp. v. FERC*,
  992 F.3d 1071 (D.C. Cir. 2021) ................................... 5, 6

*Sugar Cane Growers Co-op. of Fla. v. Veneman*,
  289 F.3d 89 (D.C. Cir. 2002) ........................................ 3

*Susquehanna Int'l Grp., LLP v. SEC*,
  866 F.3d 442 (D.C. Cir. 2017) ...................................... 13

*XO Energy MA, LP v. FERC*,
  77 F.4th 710 (D.C. Cir. 2023)....................................... 4, 6, 7, 14

**Statutes**

16 U.S.C. § 1536(a)(2) .......................................................... 7

49 U.S.C. § 10101(4)............................................................ 12

49 U.S.C. § 10101(5)............................................................ 12

49 U.S.C. § 10102(9)............................................................ 9

49 U.S.C. § 11101(a)............................................................ 9

iii

## Regulations

49 C.F.R. Parts 200–299 ................................................................ 9

## Other Authorities

Seven County Infrastructure Coalition, Utah,
   Inducement Resolution, Private Activity Bonds (May
   8, 2025), https://scic-utah.org/wp-
   content/uploads/2025/06/Approved-and-Signed-
   Resolution-2025-05A-1.pdf ........................................................ 13

U.S. Supreme Court Ruling in Seven County Infrastructure
   Coalition v. Eagle County (May 29, 2025),
   https://www.eaglecounty.us/news_detail_T24_R512.php ........... 9

## INTRODUCTION

The Supreme Court's opinion in this case unqualifiedly endorses the Surface Transportation Board's environmental review and reverses this Court's contrary judgment. In so doing, the Supreme Court rejects this Court's primary reason for vacating the order that authorized the Unita Basin Railway. The two remaining pieces of this Court's decision find that the Board offered an inadequate explanation under the Endangered Species Act and paid insufficient attention to the Railway's financial viability under the ICC Termination Act. 82 F.4th 1152, 1188, 1192–93 (D.C. Cir. 2023). Because those deficiencies involve failures of explanation, not evidence, they are well-suited for a remand to the Board that does not vacate the Board's order. *See Am. Pub. Gas Ass'n v. U.S. Dep't of Energy*, 22 F.4th 1018, 1031 (D.C. Cir. 2022). Add the Board's statutory presumption in favor of rail construction, slip op. at 10 (Sotomayor, J., concurring), and remanding without vacating is the clear choice.[1]

---

[1] Intervenor-Respondents understand that the Surface Transportation Board and the United States agree that remand without vacatur is appropriate, and that they plan to file a response to this motion further setting out their position.

## ARGUMENT

This Court originally chose to vacate and remand the Surface Transportation Board's order. 82 F.4th at 1196. But the Supreme Court has now rejected this Court's main reason for vacating: its conclusion that the Board's "poor environmental review" was "alone" sufficient to "render[] arbitrary" the Board's final decision. *Id.* The remaining deficiencies identified by this Court should be remanded to the Board without vacating the Board's order.

## I. Because the Supreme Court's decision addressed only NEPA, this case should be remanded.

This Court's original opinion and judgment found three flaws in the Surface Transportation Board's order approving the Uinta Basin Railway: (1) "NEPA violations arising from the EIS," (2) the "fail[ure] to assess impacts on the Colorado River fishes downline" under the Endangered Species Act, and (3) "fail[ure] to conduct a reasoned application of the appropriate Rail Policies" under the ICC Termination Act. 82 F.4th at 1196. Describing these deficiencies as "significant," this Court vacated the Board's order, its EIS, and the related Biological Opinion. *Id.* It then remanded the case to the Board, which would have had the chance to address this Court's adverse findings. *Id.*

2

Before the Board could start its work on remand, the Supreme Court granted certiorari. Now, the Supreme Court has reversed this Court's judgment finding "NEPA violations arising from the EIS," 82 F.4th at 1196, and returned the case to this Court. Slip op. at 22. Since the Supreme Court's opinion does not address this Court's findings under the ESA and the ICC Termination Act, those issues should go back to the Board without delay, so the Board can conduct the "further proceedings" ordered in this Court's original opinion. 82 F.4th at 1196. But because the Supreme Court reversed the most significant part of this Court's judgment—its conclusion that NEPA violations required the Board's EIS to be vacated—this Court should send the ESA and ICC Termination Act issues back to the Board without vacating the Board's order.

Deciding to vacate an agency's final order requires a court to consider two factors. First and most important: "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly)." *Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 188 (D.C. Cir. 2017) (quoting *Sugar Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89, 98 (D.C. Cir. 2002)). Second, "the disruptive consequences of an interim change that may itself be changed." *Id.* The idea behind this test has always been to

3

distinguish "between agency reasoning that is so crippled as to be unlawful and action that is potentially lawful but insufficiently or inappropriately explained." *Radio-Television News Dirs. Ass'n v. FCC*, 184 F.3d 872, 888 (D.C. Cir. 1999) (citation and internal quotation marks omitted). After the Supreme Court's decision, the Board's reasoning is no longer crippled.

## II. Because the Board can adequately explain itself on remand, its order should not be vacated.

Unlike some of its now-reversed NEPA findings, this Court's findings under the ESA and the ICC Termination Act involved nothing more than insufficient or inappropriate explanations. Such failures of explanation are "the type of deficiency most readily remedied on remand." *Am. Pub. Gas Ass'n*, 22 F.4th at 1031; *see also XO Energy MA, LP v. FERC*, 77 F.4th 710, 719 (D.C. Cir. 2023) (holding that vacatur is "less proper" when the agency has merely failed to explain its decision). Especially when "there seems to be a significant possibility that" the agency "may find an adequate explanation for its actions," a remand that leaves the agency's decision in place is often best. *Am. Clean Power Ass'n v. FERC*, 54 F.4th 722, 728–29 (D.C. Cir. 2022) (citation omitted). Here, the Board not only has several ways to explain its ESA and ICC Termination Act decisions, it will also be applying a presumption in favor of rail

construction, *see Mid States Coal. for Progress v. Surface Transp. Bd.*, 345 F.3d 520, 552 (8th Cir. 2003).

## A. The Board's explanation for its ESA decision does not justify vacating its order.

This Court's decision under the ESA addresses a narrow objection "to the Board's determination of the relevant action area." 82 F.4th at 1187. Upholding that objection, the Court found that the Board's definition of the action area was "unreasoned and fails to demonstrate a 'rational connection between the facts found and the choice made.'" *Id.* at 1188 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The Court specifically questioned how the Board could have reasonably excluded "waterways downline near the Union Pacific Line" from its ESA analysis, "given the record evidence" of increased downline leaks and accidents. *Id.* Then, based on this lack of "reasoned decisionmaking," the Court held that the Board had "arbitrarily narrowed the scope of ESA review." *Id.*

This Court's decision never suggests that it would be impossible for the Board to explain the action area used in its ESA review. Its decision is instead more like *Shafer & Freeman Lakes Environmental Conservation Corp. v. FERC*, where both the action agency and the Fish and Wildlife Service had "fail[ed] to address an important

5

issue" under the ESA rules, but could still "redress their failure of explanation on remand while reaching the same result." 992 F.3d 1071, 1096 (D.C. Cir. 2021) (brackets omitted). The Court in *Shafer* thus remanded without vacating. *Id.* In so doing, it illustrated the broader principles that "failures to explain" are "the type of deficiency most readily remedied on remand," *Am. Pub. Gas Ass'n*, 22 F.4th at 1031, and that even "a significant possibility" of the agency developing "an adequate explanation" on remand makes vacating "less proper," *XO Energy*, 77 F.4th at 719. Those principles make sense. Agencies rightly receive "deference on matters relating to their areas of technical expertise." 82 F.4th at 1188 (citation and internal quotation marks omitted); *see* slip op. at 10–11. Thus, on remand, the Board can apply its expertise to rationally connect the facts with its decision.

The Supreme Court's decision in this case has suggested some of the connections that the Board may make on remand. "NEPA requires agencies to focus on the environmental effects of the project at issue." Slip op. at 3. In this case, the Board "needed to address only the effects of the 88-mile railroad line," and it "did so." *Id.* The Board may find that similar logic supports the limits on its action area under the ESA. Or it may explain that neither the small

chance of accidents nor the small size of leaks hundreds of miles from the project is "likely to jeopardize the continued existence of any endangered species or threatened species," 16 U.S.C. § 1536(a)(2). Either way, there is more than "a significant possibility" that the Board "may find an adequate explanation for its actions." *XO Energy*, 77 F.4th at 719. Vacating the Board's decision on ESA grounds is thus "less proper." *Id.*

## B. The ICC Termination Act errors identified by this Court are easily corrected.

The story under the Board's organic statute, the ICC Termination Act, is much the same. This Court's original decision recognized that the Board's job is to "properly consider and apply the relevant Rail Policies" in the Act. 82 F.4th at 1192 (citation, internal quotation marks, and brackets omitted). But it found that the Board fell short in two ways. First, the Board "did not provide adequate attention to comments questioning the financial viability of the Railway," as required by "the relevant economic and regulatory policies." *Id.* (internal quotation marks omitted). Second, the Board "relie[d] solely" on an inadequate NEPA review when considering the statute's "environmental policies." *Id.* at 1194. At the same time, this Court knew that "whether the Board ultimately arrived at the right outcome in light of its findings" was not a question for

7

the Court. *Id.* at 1195. The question, instead, was whether "the Board failed to adequately consider the Rail Policies and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* (citation and internal quotation marks omitted). Such a failure can readily be remedied on remand. *Am. Pub. Gas Ass'n*, 22 F.4th at 1031.

### 1. The Supreme Court's decision validates the Board's NEPA review.

The second of these perceived ICC Termination Act failings is resolved by the Supreme Court's decision in this case. The Board's NEPA review was not, as this Court had found, inadequate. Rather, "[t]he Board's approach complied with NEPA" by focusing on "the project at hand." Slip op. at 16. Again, the Board "needed to address only the effects of the 88-mile railroad line" and its "EIS did so." *Id.* at 3. The Court further explained that "where an agency has no ability to prevent a certain effect due to its limited statutory authority over the relevant actions, the agency cannot be considered a relevant cause of the effect." *Id.* at 17 (quoting *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 767 (2004) (internal quotation marks omitted)). "The Board approves railroad lines"; effects that go beyond that "limited statutory authority" are thus not properly part of its NEPA review. *Id.*

Put another way, the ICC Termination Act limits the Board's NEPA obligations. "[T]he Act contains a clear presumption in favor of approving new railways." Slip op. at 10 (Sotomayor, J., concurring); *see Mid States*, 345 F.3d at 552. Beyond that, though, the Board's jurisdiction is narrow. The Act makes railroads "common carriers," thereby barring them from discriminating against any product or commodity that requests service. Slip op. at 20–21 n.6 (citing 49 U.S.C. §§ 11101(a), 10102(9)). "[R]ailroad operations and the routing of train traffic are subject to the sole ongoing control of the railroad, and are not controlled by [the Board]." *CSX Corp. & CSX Transp., Inc., Norfolk S. Corp. & Norfolk S. Ry. Co. – Control & Operating Leases/Agreements – Conrail Inc. & Consolidated Rail Corp.*, 3 S.T.B. 196, 1998 WL 456510 at *106 n.248 (July 20, 1998). Nor does the Board regulate downline rail safety—the Federal Railroad Administration does that. *See* 49 C.F.R. Parts 200–299 (FRA rules). After the Supreme Court's decision, any alleged failings in the Board's weighing of these environmental issues, which sit outside the Board's jurisdiction, are no longer obstacles to the Board's approval of the Uinta Basin Railway.

Despite the Supreme Court's reasoning, project opponents have claimed that its decision "left undisturbed" this Court's findings

about "downline impacts," including rail accidents and wildfires.[2]
Wrong. The Supreme Court, emphasizing heightened judicial deference to an agency's "speculative assessments or predictive or scientific judgments," held that a reviewing court "should defer to agencies' decisions about where to draw the line" in a NEPA review. Slip op. at 11. The agency's line-drawing role, the Court specifically held, includes deciding "how far to go in considering indirect environmental effects from the project at hand." *Id.* That holding, especially when combined with the reversal of this Court's judgment, overturns this Court's conclusions concerning "the Board's assessment of indirect or down-line impacts of the Railway." 82 F.4th at 1181 (internal quotation marks omitted). On top of that, this Court's analysis of downline impacts cannot survive the Supreme Court's conclusion that the Board's "statutory authority" is "limited" to "approv[ing] railroad lines." Slip op. at 17. Accidents, fires, and other downline effects are outside the Board's regulatory authority, and thus outside its NEPA responsibility. The Supreme Court did not have to name the downline effects discussed in this Court's decision for those parts of the decision to be reversed.

---

[2] Eagle County Responds to U.S. Supreme Court Ruling in Seven County Infrastructure Coalition v. Eagle County (May 29, 2025), https://www.eaglecounty.us/news_detail_T24_R512.php.

But even if the Supreme Court's decision were read not to reach this Court's downline indirect impact holdings, those holdings do not justify vacatur. As the Supreme Court noted, "[e]ven if an EIS falls short in some respects," that may not "require a court to vacate the agency's ultimate approval of a project." Slip. op. at 14. Here, the Board's "ultimate approval" should stand. Like this Court's ESA findings, its downline indirect impact findings were, at bottom, failures of explanation. 82 F.4th at 1182 (finding, in reliance on a now-withdrawn rule, that the Board did not "explain why the information was unavailable and what actions the agency took to address that unavailability"); *id.* at 1183–84 (describing the Board's wildfire analysis as "unreasoned"). Because such explanation failures are "the type of deficiency most readily remedied on remand," *Am. Pub. Gas Ass'n*, 22 F.4th at 1031, and because this Court recognized that the Board has already collected information on these issues, 82 F.4th at 1181–84, there would be no reason to vacate the Board's decision even if project opponents were right to read the Supreme Court's NEPA reversal narrowly.

## 2. Questions about financial viability are easily answered on remand.

As for any questions about the Railway's "financial viability," they are readily addressed on remand. This Court held that the

11

Railway's financial viability implicates the fourth and fifth rail policies: "ensur[ing] the development and continuation of a sound rail transportation system with effective competition among rail carries and with other modes" and "foster[ing] sound economic conditions in transportation and ensur[ing] effective competition and coordination between rail carriers and other modes." 49 U.S.C. § 10101(4), (5); *see* 82 F.4th at 1192–93. The Board expressly found that a new freight rail option would advance those goals, and that the project's financial viability was a matter for the applicant and the markets. *Id.* But as this Court saw it, the Board's own precedent barred the Board from "ignor[ing] serious concerns about financial viability." *Id.* at 1193. Given that precedent, this Court held that the Board had failed to explain either its change in position or how the Unita Basin Railway was "meaningfully distinct." *Id.*

On remand, the Board could remedy this deficiency in at least three ways.

- The Board could explain why—consistent with the Eighth Circuit's holding that "the ultimate test of financial fitness will come when the railroad seeks financing," *Mid States*, 345 F.3d at 552—it is changing its view on the need for evidence of financial viability. *See Fox Television Stations, Inc. v. FCC*,

12

280 F.3d 1027, 1048 (D.C. Cir. 2002) (declining to vacate where it remained possible that the agency could "justify its change of position" on remand).

- The Board could explain how the Unita Basin Railway *is* "meaningfully distinct" from the projects in which it has required more evidence of financial viability. *See Ne. Md. Waste Disposal Auth. v. EPA*, 358 F.3d 936, 949–50 (D.C. Cir. 2004) (remanding without vacating for an explanation of why a rule distinguished between different plant capacities).

- The Board could collect evidence of financial viability from the Railway, which the Railway will be glad to provide.[3] *See Susquehanna Int'l Grp., LLP v. SEC*, 866 F.3d 442, 446, 451 (D.C. Cir. 2017) (declining to vacate even though the agency had "little or no evidence" to support its decision).

As with the ESA issues discussed above, the first two of these remedies involve better explanations, not more evidence. For that

---

[3] Since the Board's 2021 decision, the Railway has secured outside financing and is seeking private activity bond funding. *See* Seven County Infrastructure Coalition, Utah, Inducement Resolution, Private Activity Bonds (May 8, 2025), https://scic-utah.org/wp-content/uploads/2025/06/Approved-and-Signed-Resolution-2025-05A-1.pdf. At the same time, demand for Uinta Basin waxy crude has continued to grow.

reason, they are ideal issues for remand without vacatur. *Am. Pub. Gas Ass'n*, 22 F.4th at 1031. But even remand "[i]n technical areas," requiring "further explanation, with sufficient support from studies," need not involve vacatur. *A.P. Bell Fish Co., Inc. v. Raimondo*, 94 F.4th 60, 65 (D.C. Cir. 2024).

*    *    *

The Supreme Court's opinion in this case sweeps broadly. The issues that remain for the Board on remand are mere matters of explanation—just the sort of issues that this Court has repeatedly said should be handled without vacating the agency's decision. And when the Board's "clear presumption" in favor of approving new rail construction is factored into the mix, any residual reasons for vacating the Board's decision vanish.

## C.  Remand without vacatur would not risk significant disruption.

The second part of this Court's usual remand-without-vacatur test considers the degree to which vacating the agency's decision may have "disruptive consequences." *XO Energy*, 77 F.4th at 719 (quoting *Black Oak Energy, LLC v. FERC*, 725 F.2d 230, 244 (D.C. Cir. 2013)). This inquiry is pragmatic, fading in importance when the likelihood of favorably resolving the merits issues is high. Indeed, as this Court explained in *Fox Television*, disruption "is only

14

barely relevant" when the Court thinks it is possible the agency "will be able to justify" its decision on remand. 280 F.3d at 1049; *see also, e.g.*, *Delta Air Lines, Inc. v. Export-Import Bank of the U.S.*, 718 F.3d 974, 978 (D.C. Cir. 2013) (omitting any discussion of disruptive consequences in ordering remand without vacatur).

Such is the case here. Especially in light of the Board's "clear presumption" in favor of new rail construction, *Seven County*, slip op. at 10 (Sotomayor, J., concurring), it is easy to envision the Board reapproving the Railway in this case. Thus, whatever disruption may occur from vacating the Board's decision is "only barely relevant." *Fox Television*, 280 F.3d at 1049. Vacatur is unnecessary when an agency's errors are easy to fix.

Further, vacating the Board's decision could disrupt the Railway's efforts to secure funding, thereby delaying benefits to the people living in the Uinta Basin. The Railway will increase access to national markets for the basin's farmers and ranchers, not just its oil and gas producers. JA280–83. This increased access will create local jobs and increase local income, including for the members of the Ute Indian Tribe of the Uintah and Ouray Reservation. JA253, JA286; *see* JA1315, JA792 (Ute Tribe letters of support). And bringing these benefits to the people who live in the Uinta Basin is one

15

of the chief goals of the Seven County Infrastructure Coalition. JA252.

On the other side of the ledger, a remand without vacatur would not threaten interim environmental harm. While funding for the Railway is needed right away, it will still take time before construction can start. The next step for the Railway is site investigation and engineering; for an 88-mile project that involves multiple tunnels, that is no small task. But it is a task with no significant environmental effects. Thus, remanding the Board's decision without vacating it would not raise any of the longer-term environmental concerns that this Court's decision flagged. It would just ease the Railway's financial burdens while the Board addresses the few issues that remain after the Supreme Court's decision.

## CONCLUSION

The Court should remand this matter to the Surface Transportation Board without vacating the Board's decision.

16

Respectfully submitted,

/s/ Jay C. Johnson
Jay C. Johnson
VENABLE LLP
600 Massachusetts Ave, NW
Washington, DC 20001
(202) 344-4000
jcjohnson@venable.com

*Counsel for Seven County*
*Infrastructure Coalition and*
*Uinta Basin Railway, LLC*

Dated: July 2, 2025

## CERTIFICATE OF COMPLIANCE

This motion complies with the word limits and typeface requirements in the D.C. Circuit Rules. It contains 3324 words, as calculated by Microsoft Word's word-count function.

/s/ Jay C. Johnson
Jay C. Johnson

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2025, I served a true and correct copy of this motion by electronic mail on all counsel of record via the Court's electronic filing system.

/s/ Jay C. Johnson
Jay C. Johnson

## CERTIFICATE AS TO PARTIES AND AMICI

This case involves two consolidated petitions for review. Petitioner in Case No. 22-1019 is Eagle County, Colorado. Petitioners in Case No. 22-1020 are the Center for Biological Diversity, Living Rivers, Sierra Club, Utah Physicians for a Healthy Environment, and WildEarth Guardians. Respondents in the consolidated cases are the Surface Transportation Board, the United States of America, and the U.S. Fish and Wildlife Service.

Seven County Infrastructure Coalition and Uinta Basin Railway, LLC intervened as respondents. Seven County Infrastructure Coalition was the applicant before the Surface Transportation Board. Uinta Basin Railway, LLC is the proposed operator of the rail line.

Amici curiae in support of Petitioners are a group of Colorado municipalities: City of Glenwood Springs, Town of Minturn, Town of Avon, Town of Red Cliff, Town of Vail, Routt County, Boulder County, Chaffee County, Lake County, and Pitkin County.

The state of Utah filed an amicus curiae brief in support of Respondents.

# RULE 26.1 DISCLOSURE STATEMENT

Intervenor-Respondent Seven County Infrastructure Coalition is an independent political subdivision of the state of Utah. As such, it is not required to file a corporate disclosure statement under Circuit Rule 26.1(a).

Intervenor-Respondent Uinta Basin Railway, LLC is a limited liability company organized and existing under the laws of the state of Delaware. It is a freight railroad company primarily formed to finance, construct, and operate the Uinta Basin Railway in Utah. It does not issue securities to the public and is a wholly owned subsidiary of Uinta Basin Railway Holdings, LLC, formerly known as Drexel Hamilton Infrastructure Partners Fund II, LLC. Uinta Basin Railway Holdings, LLC does not issue securities to the public and no publicly held company has a 10% or greater ownership interest in it.